UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NICOLE K. and ROMAN S., by next friend Linda R.; et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 1:19-cv-01521-JPH-MJD |
| TERRY J. STIGDON, Director of the Indiana Department of Child Services, in her official capacity, et al., | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

The plaintiffs in response to the defendants' motion to dismiss argue that they have put enough facts on paper to state a claim, and, so their argument goes, their case survives a motion to dismiss. But this case, as pled and at this point, does not come down to any particular facts. Instead, it comes back to the fact that the United States Supreme Court has cabined the right to counsel to a limited set of cases, and there is consequently no claim to state, regardless of the number of facts recited in the complaint. If, on the other hand, there may be complicated situations where a closer look at what kind of counsel should be appointed, then a blanket proclamation from a federal court announcing a new right would be inappropriate route. Instead, the Court should abstain from wading into such a situation through a class action lawsuit. Either way, this case should be dismissed.

## I.   The plaintiffs have not established that they have standing to bring this lawsuit.

As noted in the defendants' motion to dismiss, to have standing a plaintiff must demonstrate: (1) a personal injury; (2) fairly traceable to the defendant; (3) that it is likely to be redressed in the event of a favorable ruling from the court. *Plotkin v. Ryan*, 239 F.3d 882, 884 (7th Cir. 2001); *see also O'Sullivan*, 396 F.3d at 854. The injury must be causally related to the defendant's action and not the result of the independent action of a third party. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Also, it must be likely, not just speculative, that a favorable ruling from the court will redress the plaintiffs' injury. *Id.* at 561.

### a.  Director Stigdon not a proper party.

To start at the third factor, as noted in the defendants' motion to dismiss, Terry J. Stigdon, the Director of DCS, cannot redress the injury claimed by the plaintiffs. In response, the plaintiffs rehash their argument that "DCS is responsible for removing children from their homes and filing petitions that initiate CHINS proceedings," [Dkt. 67 at 25], and that "DCS has undue influence" in CHINS and cases, and that DCS has failed to "ensure that attorneys are appointed to represent children in those proceedings." *Id.* But the plaintiffs' problem here is evident: their issue with Director Stigdon is an invented *duty* in every single case "to request and advocate that the court appoint an attorney for the child that is the subject of that proceedings." [Dkt. 67 at 25, citing Dkt. 40 at 27]. And the specific standing issue identified here by the defendants is redressability. The question is whether certain relief is redressable through the Director. It is not.  Plaintiffs have

2

pled themselves out of a claim here, acknowledging that DCS has authority "to request and advocate," and no more.

In order to meet the "case-or-controversy requirement," the plaintiff here must show that the requested relief will redress the alleged injury. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). Plaintiffs do not allege that anyone from DCS has authority to appoint counsel. At most, DCS may request that an attorney be appointed for a child (as can a prosecutor, GAL, or CASA). An order from this Court for DCS to request or advocate that an attorney be appointed does not redress the plaintiffs' alleged injury. Instead, it's the same kind of problem the plaintiffs faced in *Lujan v. Defs. of Wildlife*, where the Supreme Court noted that the "most obvious problem in the present case is redressability." 504 U.S. 555, 568 (1992). There the plaintiffs sued only a party that could revise its regulations to require consultation, but other parties may not be bound by the regulation. *Id.* Similarly, Director Stigdon may be able to ask that attorneys to be appointed in all CHINS and TPR cases, but that request by itself does not fix the alleged problem the plaintiffs point to.

Standing goes to "whether the dispute touches upon the 'legal relations of the parties having adverse legal interests.'" *O'Sullivan v. City of Chicago*, 396 F.3d 843, 853 (7th Cir. 2005) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). The second and third elements of standing require that "a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not

before the court." *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 41-42 (1976). Only the parties that enforce the challenged statute will be able to redress the asserted injury. Indeed, the Southern District of Indiana has held that it has no subject matter jurisdiction to adjudicate lawsuits against Indiana state officials who have no authority to provide the relief the plaintiffs seek. *See Libertarian Party of IN v. Marion Cnty. Bd. of Voter Registration*, 778 F. Supp. 1458, 1461 (S.D. Ind. 1991) (holding that claims against the members of the Indiana State Election Board in a suit seeking to obtain copies of Marion County voter registration data were not justiciable because the Marion County Board could provide all requested relief and the State Election Board could not discipline or remove members of the county board.)

And other courts have found that the "power to direct and advise does not make the alleged injury fairly traceable" to the plaintiffs' injury. *Id*. at 615. *See also Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) ("a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.").

Director Stigdon or DCS does not decide when separate counsel is appointed for a child in CHINS or TPR proceedings. As the plaintiffs acknowledge, DCS has a role only to request or advocate for separate counsel to be appointed. That is not enough to meet the burden Article III places on the plaintiff to establish standing against the Director; the claims against the Director should therefore be dismissed.

### b. The injuries alleged by the plaintiffs are not traceable to the actions of the defendants.

In addition, the injury alleged must be causally related to the defendant's action; it cannot be the result of the independent action of a third party. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As noted in the motion to dismiss, the link between the heartbreaking situations inherent in CHINS and TPR cases and a lack of an attorney directed by a child is so speculative that it does not meet the standing requirements. The plaintiffs' problem is, again, evident in their complaint. When a child is two months old, as one of the plaintiffs was when removed, [Dkt. 40 at 15], it is impossible to trace any injury to the lack of an attorney doing what the two month old wants done in the case. That failure to link the alleged injury and requested relief means that they have not met the minimum standards for standing.

### c. The Court should abstain in this case under Younger.

This Court should abstain in this case because the principles enunciated in *Younger v. Harris* apply here. 401 U.S. 37 (1971). The plaintiffs rely on a later case, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013), to argue that *Younger* has been limited to application in only a few types of cases, so would not apply in this case. Plaintiffs are wrong. The Court should abstain here because this case relates to the furtherance of the state courts' ability to perform their judicial function, and *Sprint* does not change that consideration about why the Court should abstain.

While the plaintiffs argue that *Sprint* changed the law related to *Younger* abstention, [dkt. 67 at 26], they assert, in a footnote, that, even under pre-*Sprint*

case law, *Younger* abstention wouldn't apply. [Dkt. 67 at 27]. The plaintiffs are wrong, both pre- and post-*Sprint*.

First, pre-*Sprint*. In a class action lawsuit in a district court in the Seventh Circuit, the plaintiffs there alleged that the defendants had targeted African-American children for certain types of cases, alleging that the parents' and children's rights were being violated by, for one example, some plaintiff parents were not allowed to be present for discovery proceedings in state juvenile court. *Olison v. Governor Ryan*, No. 99 C 4384, 2000 WL 1263597, at *2 (N.D. Ill. Sept. 5, 2000). There, the district court decided that the case "clearly meets all three *Younger* abstention requirements." *Id.*

Specifically, there, like here, (1) the plaintiffs admit that the cases in state court are ongoing, (2) the state has an interest in having child abuse and neglect cases reported, investigated, and decided, and (3) the state has an interest in the child custody cases. Also, the plaintiffs did not allege any inability to raise the challenge in state court. The court there noted that several federal courts have applied *Younger* abstention in similar cases, specifically in *Moore v. Sims,* 442 U.S. 415 (1979), *David B. v. McDonald*, 156 F.3d 780, 784 (7th Cir.1998)( holding that, under *Younger,* the federal district court did not have jurisdiction over a class action case addressing the placement decisions of Illinois state juvenile court); *Brunken,* 807 F.2d 1330; *Nowicki v. Cooper,* 56 F.2d 782, 784 (7th Cir.1995); *Offutt v. Kaplan,* 884 F.Supp. 1179, 1190–91 (N.D.Ill.1995). Therefore, the court dismissed

the claims. *Olison v. Governor Ryan*, 2000 WL 1263597, at *7. Thus, pre-*Sprint Younger* abstention applies.

*Younger* abstention applies post-*Sprint,* too. The Supreme Court in *Sprint Commc'ns, Inc.,* U.S. 69, noted three situations where *Younger* abstention may apply: (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings where certain orders are uniquely in furtherance of the state courts' ability to perform their judicial function.

First, it should be noted that the plaintiffs want it both ways. They, on one hand, say that this cases touches on a child's liberty interest, but, then, on the other hand, argue that this does not a type of criminal proceeding against the children. Dkt. 67 at 27. But setting aside the question of whether the CHINS or TPR cases would be considered quasi-criminal proceedings, the proceeding with which the plaintiffs ask this Court to interfere affect a civil proceedings where certain orders are uniquely in furtherance of the state courts' ability to perform their judicial function. Therefore, abstention is appropriate.

Presiding over a case that related to a separate juvenile court proceeding, an Arizona district court addressed *Younger* abstention, deciding that *Younger* did not apply because the complaint targeted the *executive* functions of the state agencies, "not the judicial functions of the juvenile courts." *Tinsley v. McKay*, 156 F. Supp. 3d 1024, 1035 (D. Ariz. 2015). Here, we're facing the question of what the judges themselves do in a CHINS or TPR proceedings. This goes to the heart of how a court handles a case. Moreover, in *Sprint* itself, the Supreme Court recognized that

abstention may be appropriate when the case "touch[es] on a state court's ability to perform its judicial function." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013).

The issue in this lawsuit—who's represented by counsel before a trial court— touches on the juvenile court's ability to perform its judicial function. Indeed, as recognized by the Supreme Court in *Lassiter*, it was appropriate that the decision whether the appointment of counsel for indigent parents rests with the trial court, subject to appellate review. *Lassiter,* 452 U.S. at 31–32. Moreover, just over a week ago (and obviously post-*Sprint*), a court in the Seventh Circuit abstained from interfering with ongoing juvenile court proceedings, finding that the *Younger* factors counseled toward abstention. *Garcia v. Fox*, No. 18-CV-04205, 2019 WL 2371718, at *2 (N.D. Ill. June 5, 2019). In that case, the plaintiffs sought relief that overlapped with issues in a juvenile court case, and may have been seeking relief from earlier court decisions. The court, citing *Younger*, dismissed the case because each of the *Younger* abstention elements—ongoing state proceeding judicial in nature, involving important state interests, and the plaintiff has an opportunity to raise the federal claim—existed in that case. Further, to the extent the plaintiffs were challenging earlier state court decisions, those claims were barred by the *Rooker-Feldman* doctrine, which precludes individuals from seeking review of state court judgments in federal court. *Id, citing Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 414 (1923). Here, the plaintiffs have not alleged that anyone (a child, a GAL, DCS, or a CASA) has asked and been denied counsel appointment for the child, so *Rooker-*

*Feldman* at this point may not apply, but that, in itself, goes to the problem of why these questions should be handled by the trial court, addressing question of who needs counsel in a particular case and why.

Although decided pre-*Sprint*, the Seventh Circuit's reasoning in *David B. v. McDonald*, 156 F.3d 780, 783–84 (7th Cir. 1998), still makes sense. The way to challenge a juvenile court's decision is not by "haling the court and its judges into a federal forum, [instead] the plaintiffs must make their argument to the state judges in the delinquency or guardianship litigation, and appeal any adverse decisions through the usual hierarchy." *Id.* at 783-84, *citing Younger,* 401 U.S.; *Nelson v. Murphy*, 44 F.3d 497 (7th Cir.1995).

Any claim about a right of counsel should have been raised and could still be raised in the underlying CHINS or TPR actions. Again, the state trial court is uniquely situated to assess the situation and, if necessary, apply the *Eldridge* elements to the unique facts of each case to determine whether a child should be appointed counsel. *See Lassiter*, 452 U.S. at 27–32. Accordingly, the Court should decline the plaintiffs' invitation to impose a blanket "solution" to a complicated situation, and dismiss this case on abstention grounds.

## II.   The Court should dismiss this case because there is no right to counsel in TPR and CHINS cases.

This Court should dismiss the Complaint for failure to state a claim. The dispute is ripe for resolution at the motion to dismiss stage because the parties disagree fundamentally about the applicable legal standard, and the plaintiffs' claims depend entirely on their flawed view of the law. At the threshold, the

9

plaintiffs' equal protection and due process claims cannot be squared with Supreme Court precedent.

The plaintiffs rely on an assertion that they have alleged enough facts, so they survive a motion to dismiss. But if a claim (backed by all kinds of facts) is foreclosed by law, dismissal is appropriate. For example, the Seventh Circuit has recognized that a plaintiff's claim, foreclosed by binding precedent, should be dismissed. *Patton v. Przybylski*, 822 F.2d 697, 699 (7th Cir. 1987). There, even though the plaintiff alleged he had been held in a police station for 14 hours, there is no right to be free of such situations, so the case was dismissed. *Id.* Similarly, even though the plaintiff alleged certain remarks were made against him, defamation is not a deprivation of liberty, so any number of facts could not add up to a claim for which relief may be granted. *Id.* at 700. The plaintiffs here have arrayed policy and political arguments in support of their case. But as the Supreme Court has foreclosed a blanket right in these cases, the case should be dismissed, regardless of those assertions.

### a. The defendants have not violated the plaintiffs' equal protection rights.

Indiana Code §31-32-4-2(b) does not violate the Equal Protection Clause of the Fourteenth Amendment. There is no legislative classification in this case that involves a suspect class or that is alleged to violate a fundamental right. Plaintiffs, in their response, concede that they "do not assert any discrimination based on age," [dkt. 67 at 21], which is subject to rational basis scrutiny only—as argued in Defendants' Motion to Dismiss. [Dkt. 60 at 12]. Plaintiffs are alleging with no

10

certain outline that children in CHINS and TPR proceedings are being stripped of a "fundamental liberty interest" [dkt. 67 at 21] and incorrectly state that failure to appoint TPR or CHINS counsel to children in every single case is interfering with this "fundamental liberty interest." [dkt. 67 at 21]. Plaintiffs cite to G.*P. v. Ind. Dep't of Child Servs.*, 4 N.E.3d (Ind. 2014), which dictates the right of an indigent parent to have requested counsel in a CHINS proceeding under Indiana law. The plaintiffs state that since children are not guaranteed counsel then they are not being given equal protection under the law. [Dkt. 67 at 20].  Plaintiffs, without explanation, then ask this court to apply strict scrutiny. This raises the question of how does the discretion of the judge when appointing counsel or the representation of a child by a CASA or GAL, but not an attorney in some cases, violate equal protection?  "If no fundamental rights or suspect categories are at issue, '[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'" *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 637–38 (7th Cir. 2007) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 440 (1985)).

Plaintiffs, in their Response [dkt. 67 at 15], state "legal representation will lessen or eliminate certain instability and trauma that children in CHINS and TPR proceedings are forced to endure at the mercy of the system…" but this bald assertion fails to demonstrate that Indiana Code § 31-34-4-6(a)(2) violates equal protection. This statement only serves as a wish that lawyers will be able to remedy

"instability" and "trauma" (Dkt. 67 at 15) experienced by children in these unfortunate situations—better than a trained CASA or GAL— with no basis for it.

As the several cases cited in Defendants' Motion [Dkt. 60] illustrate, Indiana Code § 31-34-4-6(a)(2) is subject only to rational basis scrutiny and survives any equal protection analysis.

### b. The defendants have not violated the plaintiffs' due process rights.

As for Plaintiffs' Due Process claim, it is unclear whether Plaintiffs are alleging a violation of procedural due process, substantive due process, or both. Regardless, the plaintiffs' complaint must specify what liberty interest is at issue in order to state a claim for relief. *See, e.g., Roake v. Forest Pres. Dist. of Cook Cty.,* 849 F.3d 342, 347–48 (7th Cir. 2017) ("Roake has not plausibly alleged a due process violation because he has not shown that he was deprived of a liberty or property interest requiring the protections of due process. The district court properly dismissed Roake's Fourteenth Amendment due process claim under Rule 12(b)(6)."); *Wroblewski v. City of Washburn*, 965 F.2d 452, 457 (7th Cir. 1992) ("As with his procedural due process claim, of course, Wroblewski must establish an underlying liberty interest of which he has been deprived in order to prevail under a substantive due process theory.").

Plaintiffs' Amended Complaint states that Plaintiffs' "fundamental liberty interests" are violated because of the state's "failing to appoint counsel, or by failing to ensure that counsel are appointed, for children in CHINS and TPR proceedings." [Dkt. 40 at 34]. Thus, the liberty interest at issue is the right to an appointment of

counsel. But "[t]he pre-eminent generalization that emerges from this Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter,* 452 U.S. at 25. A child does not face the loss of personal physical liberty in a CHINS or TPR action to warrant the appointment of counsel in every case.

Plaintiffs argue that *Lassiter* is inapplicable because it addressed a parent's loss of familial relations in a termination of parental rights case, but a child should be appointed counsel because the child is at risk for losing her physical liberty. [Dkt. 67 at 16-19]. But a vague allegation that a plaintiff is at risk of losing her physical liberty, without more, does not support a claim for broad relief and warrants dismissal. Instead, the Plaintiffs must specify what liberty interest is at issue because there are numerous kinds of liberty interests protected by the Due Process Clause and not all of them warrant the appointment of counsel. The "liberty interest protected by the Due Process Clause include not only the freedom from "bodily restraint," but also include "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, [and] to worship God according to the dictates of his own conscience." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (citations omitted). *Lassiter* held that "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel," *Lassiter*, 452 U.S. at 25–26, such that a person's conditional liberty interest in a parole or probation revocation

13

hearing does not require the appointment of counsel and instead should be decided on a case-by-case basis. *Id.*

Based on this reasoning, the various liberty interests protected by the Due Process Clause operate on a continuum, and only cases which involve the loss of physical liberty, *i.e.* incarceration, requires the appointment of counsel in every case. On one end, a person may have a liberty interest to pursue a job. A step up from that is a person's right to be free from government oppression, *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 849 (7th Cir. 1990), and a child's right to stay in the care of his parents, *Doe v. Heck*, 327 F.3d 492, 518–19 (7th Cir. 2003). Next is a person's conditional liberty interest in remaining on parole or probation instead of being re-incarcerated. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). And on the far end of this continuum is a person's liberty interest to be free from physical incarceration in prison or state institution. *See Lassiter*, 452 U.S. at 25–26. It is this loss of physical liberty by incarceration in prison or a mental health institution which warrants the appointment of counsel in every case, and any lesser physical liberty interest should address the appointment of counsel on a case-by-case basis. *Id.*

Plaintiffs argue that the physical liberty which children are losing "center on whether the child will be placed in state custody through foster care and include where the child will live, with whom the child will live, and whether the integrity of family relationships will be maintained or dissolved" [dkt. 40 at 2]. Plaintiffs appear to address two different liberty interests: A child's liberty interest in remaining in

14

the custody of his parents, and a child's liberty interest in remaining free from government oppression by being placed in an abusive foster home. *Doe v. Heck*, 327 F.3d 492, 518–19 (7th Cir. 2003) ("Equally fundamental is the right of a child to be raised and nurtured by his parents."); *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 849 (7th Cir. 1990) ("Once the state assumes custody of a person, it owes him a rudimentary duty of safekeeping no matter how perilous his circumstances when he was free.").

With regard to the first kind of liberty interest, the plaintiffs do not have a right to challenge a child's removal from the parents' care under the due process clause. A child's liberty interest in being removed from their parent's home may be challenged by the child only under the Fourth Amendment. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011). Only the child's parents may raise a claim challenging their child's removal under the Due Process Clause, and if a child improperly raises such a claim under the Due Process Clause, it should be dismissed. *Id.*

With regard to a child's liberty interest in being kept safe while in state custody, the plaintiffs have again failed to state a claim for relief under Rule 12(B)(6). First, Plaintiffs have not alleged facts in their Amended Complaint which show that they have experienced the kind of oppression or abuse which shows a loss of liberty through state action. To the extent that Plaintiffs do make such allegations of state oppression or abuse, these claims are relative to the unique facts of each case and do not lend themselves to a class action seeking declaratory and

injunctive relief. Finally, and most important, a child's liberty interest in being kept safe while in state custody is not the kind of liberty interest which warrants the appointment of counsel.

*Lassiter* affirmed that plaintiffs are presumed to have a right to counsel only when their physical liberty is threatened by being physically placed in a state prison or institution, and "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." *Lassiter,* 452 U.S. at 25–26. It is only when a person is facing physical incarceration that there is a presumption of a right to counsel. *Id.* Consequently, the *Eldridge* balancing test should be applied to the unique facts of each case, and there cannot be a sweeping right to counsel in every CHINS and TPR proceeding. *Id.* at 27–32. Plaintiffs ask this Court to read a requirement for counsel in any situation where it may be somewhat plausible a liberty interest is implicated. The Supreme Court has foreclosed such a broad conception; the plaintiffs' equal protection claims should be dismissed.

*   *   *

This case is ripe for dismissal. At issue at this stage is a disagreement about what the law requires. Any disagreement about particular facts does not make a new right, the right to counsel in all CHINS and TPR cases that the plaintiffs want this Court to create. The important question of whether separate counsel should be appointed needs to be made by the juvenile court judges or through a political discussion. This case should be dismissed.

Respectfully submitted,

CURTIS T. HILL, JR.
Indiana Attorney General
Attorney No. 13999-20


By:   Jefferson S. Garn
      Deputy Attorney General
      Attorney No. 29921-49


      Diana Moers
      Deputy Attorney General
      Attorney No. 28302-82

      Andrea Rahman
      Deputy Attorney General
      Attorney No. 32728-29


OFFICE OF ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN  46204-2770
Telephone: (317) 233-6215
Fax:        (317) 232-7979
Email: Jefferson.Garn@atg.in.gov